**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YAKOV MAGDALASOV,<br><br>    Plaintiff,<br><br>    v.<br><br>BYTEDANCE INC., SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,<br><br>    Defendants. | Civil Action No.: 25-13824 (ES) (JBC)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court are two motions filed by Defendants ByteDance Inc. ("ByteDance") and Sedgwick Claims Management Services, Inc. ("Sedgwick") (collectively, "Defendants"): ByteDance moves to dismiss Plaintiff Yakov Magdalasov's ("Plaintiff") claim seeking short-term disability benefits pursuant to Federal Rule of Civil Procedure 12(b)(6), to compel arbitration of any remaining claims, and to stay the action, (D.E. Nos. 23–25 ("ByteDance motion")); and Sedgwick moves to dismiss Plaintiff's Complaint (D.E. No. 1 ("Compl.")) or otherwise compel arbitration, (D.E. No. 33 ("Sedgwick motion")).

The Court has carefully considered the parties' submissions in connection with the motions, as well as the balance of the record, and decides the matter without oral argument. *See* FED. R. CIV. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated herein, Defendants' motions to dismiss and compel arbitration are **GRANTED**.

I.      **BACKGROUND**

A.      **Factual Allegations**

Plaintiff brings this action *pro se* under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against Defendants ByteDance and Sedgwick, for allegedly wrongful denial of disability benefits and retaliatory conduct against Plaintiff for asserting his rights under an employee benefit plan.  (Compl. ¶ 1).  Plaintiff alleges that, at all relevant times, he was an employee of ByteDance and a participant in ByteDance's Short-Term Disability Plan ("Plan"), and that Sedgwick was the third-party claims administrator for the Plan.  (*Id.* ¶¶ 5 & 7).

Plaintiff contends that he began a medical leave of absence in March 2025 due to serious mental-health conditions and timely submitted a claim for short-term disability benefits covering the period from March 14, 2025, through May 12, 2025.  (*Id.* ¶¶ 8–9).  Plaintiff further alleges that, while he received disability benefits under the Plan for the period of March 14 through April 11, 2025, he learned that benefits for the "second portion of his leave, covering April 12 through May 12, had been denied."  (*Id.* ¶ 10).  Plaintiff alleges that he repeatedly contacted Sedgwick and ByteDance thereafter, seeking clarification and assistance regarding the denial and the procedures necessary to maintain or extend his leave but received no meaningful response.  (*Id.* ¶¶ 11–16).

Plaintiff contends that, after escalating the matter to various governmental agencies and internal company channels, Sedgwick issued written denial dated May 21, 2025, concerning the disputed portion of his disability leave.  (*Id.* ¶¶ 15–18).  Plaintiff alleges that the denial failed to provide a meaningful explanation for limiting his approved leave through April 11, 2025, rather than May 12, 2025.  (*Id.* ¶ 18).

2

According to the Complaint, before Plaintiff commenced medical leave, ByteDance presented him with an ultimatum to either agree to a separation or be placed on a performance improvement plan effective April 14, 2025. (Compl. ¶ 19). Plaintiff alleges that the decision to approve disability benefits only through April 11, 2025, was therefore retaliatory and improperly influenced by employment-related considerations. (*Id.* ¶¶ 20–21).

Plaintiff contends that he appealed the denial on June 17, 2025, and submitted additional medical documentation supporting leave through August 10, 2025. (Compl. ¶ 22). Plaintiff further alleges that he continued to receive little guidance regarding the leave-extension process and that his requests for financial accommodations while the appeal remained pending were rejected. (*Id.* ¶¶ 23–25). According to the Complaint, on July 1, 2025, Plaintiff was informed that his appeal had been denied. (*Id.* ¶ 26). Plaintiff contends that the denial improperly relied upon non-medical considerations, disregarded his treating provider's findings, and caused a worsening of his mental-health condition. (*Id.* ¶¶ 27–31). Plaintiff alleges that he submitted a rebuttal challenging the denial, but ultimately received notice on July 18, 2025, that his final appeal had been denied. (*Id.* ¶¶ 32–34). Plaintiff thereafter commenced this action. (*See generally* Compl.).

**B.    Procedural History**

On July 22, 2025, Plaintiff filed the Complaint, asserting ERISA claims against ByteDance and Sedgwick. (*See generally* Compl.). Plaintiff alleges: (i) denial of benefits under 29 U.S.C. § 1132(a)(1)(B); (ii) retaliation in violation of 29 U.S.C. § 1140; and seeks (iii) equitable relief under 29 U.S.C. § 1132(a)(3). (*Id.* ¶¶ 37–49). That same day, Plaintiff filed a motion seeking a temporary restraining order and preliminary injunction. (D.E. No. 4). The parties subsequently briefed that motion, (D.E. Nos. 5, 14, 16–18, 29 & 34–36), and the Court thereafter denied Plaintiff's request for temporary injunctive relief. (D.E. No. 39).

On August 21, 2025, ByteDance moved to dismiss certain claims and to compel arbitration of, and stay, the remaining claims. (*See* ByteDance motion; D.E. No. 24 ("ByteDance Mov. Br.")). Plaintiff opposed the motion, submitted a declaration in support of his opposition, and later filed a notice clarifying aspects of his opposition.[1] (D.E. Nos. 30–32 (opposition memorandum at D.E. No. 30 ("Pl. Opp. Br."))). ByteDance filed a reply brief. (D.E. No. 37 ("ByteDance Reply Br.")). On September 4, 2025, Sedgwick likewise moved to dismiss the Complaint, compel arbitration, and stay the action. (*See* Sedgwick motion; D.E. No. 33-1 ("Sedgwick Mov. Br.")). Plaintiff filed a consolidated reply opposing that motion and asserting a sur-reply to ByteDance's reply brief, (D.E. No. 38 ("Consol. Reply")), and Sedgwick filed a reply, (D.E. No. 46 ("Sedgwick Reply Br.")).

In addition to his formal opposition papers, Plaintiff filed several motions seeking leave to file supplemental briefing and sur-replies, as well as a motion to strike certain of Defendants' submissions. (D.E. Nos. 45, 47 & 49). Defendants responded to certain of those submissions and objected to Plaintiff's supplemental filings on the ground that he had not provided any reason or legal authority supporting the filing of a sur-reply. (*See, e.g.,* D.E. Nos. 48 & 50).[2]

Thereafter, ByteDance submitted a letter identifying supplemental authority in support of its motion, and Plaintiff responded. (D.E. Nos. 53 & 54). On February 6, 2026, in light of the factual and legal overlap between the two motions, the Court determined that it would resolve them together and administratively terminated ByteDance's motion for docket-management purposes only, noting that it would resolve that motion on the merits. (D.E. No. 57).

---

[1]    The notice was intended to clarify that the opposition was also intended to oppose ByteDance's motion to dismiss. (D.E. No. 32).

[2]    The Hon. James B. Clark, U.S.M.J. granted Plaintiff leave to file his consolidated reply and sur-reply and denied Plaintiff's related motion to strike. (D.E. No. 55).

The motions are now ripe for disposition.  The Court notes that, in light of Plaintiff's *pro se* status, and in the interest of justice, the Court has considered all of the parties' submissions.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Standard

Under Rule 12(b)(6), the Court may dismiss a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  (*Id.* at 556).  On a Rule 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The burden is on the moving party to show that the plaintiff has not stated a facially plausible cause of action.  *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) ("When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim.") (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as well as the documents attached to and specifically relied upon or incorporated therein.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("'[A] document integral

to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.'" (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (internal quotation marks omitted))); *see also Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003). The Court may also consider "matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004))).

In assessing *pro se* complaints, courts are obligated to "liberally construe" the litigant's pleading. *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citation omitted). Nevertheless, *pro se* litigants, like all other litigants, must allege sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) ("*[P]ro se* litigants ... must still allege sufficient facts to support a claim." (internal quotation marks and citation omitted)); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (highlighting that even *pro se* complaints must meet the plausibility standard set forth in *Iqbal* (quoting *Iqbal*, 556 U.S at 678)).

### B.      Arbitration Standard

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560

F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the ["FAA"], a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999) (citation omitted).

"When the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 775 n.5 (3d Cir. 2013) (quoting *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 112 (3d Cir. 2000)). Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

A court's determination regarding whether the parties agreed to arbitrate is considered under "state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, "'federal law applies to the interpretation of arbitration agreements,' [therefore,] once a court has found that there is a valid agreement to arbitrate, regardless of whether the action is in a federal or a state court[,] the determination of whether 'a particular dispute is within the class of those disputes governed by the arbitration clause ... is a matter of federal law.'" *Century Indem. Co.*, 584 F.3d at 524 (quoting *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003)).

## III.   DISCUSSION

### A.      Plaintiff's ERISA § 502(a)(1)(B) Claim

In Count I of the Complaint, Plaintiff asserts that Defendants denied him benefits under the Plan arbitrarily and capriciously, (Compl. ¶ 38), and failed to follow ERISA-compliant procedures by not providing him with timely notice of the initial denial and subsequently ignoring his requests for clarifications and appeals. (*Id.* ¶ 39). ByteDance argues that Plaintiff has failed to state a claim for benefits and his ERISA claim should be dismissed. (ByteDance Mov. Br. at 8–9).

Here, ByteDance concedes that the Plan at issue "is a component of [ByteDance]'s ERISA plan." (ByteDance Mov. Br. at 9). However, it argues that Plaintiff's claim for benefits under ERISA Section 502(a)(1)(B) must be dismissed because Plaintiff fails to identify any provision of the governing Plan entitling him to the requested benefits. (*Id.* at 10). Specifically, ByteDance argues that, Plaintiff, though claiming he is unable to work, "does not identify specific provisions of the STD Plan that would support an award of short-term disability benefits." (*Id.* at 11). In opposition[3], Plaintiff argues that, in the Complaint, he sufficiently alleges:

- his entitlement to short-term disability benefits under the governing plan;
- that those benefits were denied arbitrarily and capriciously; and
- that Defendants violated ERISA claims-procedure regulations and disregarded treating provider evidence.

---

[3]      In his formal opposition to ByteDance's motion, Plaintiff did not substantively address ByteDance's Rule 12(b)(6) arguments. (*See generally* Pl. Opp. Br.). However, Plaintiff subsequently filed a "Consolidated Reply in Further Opposition to Defendants' Motions" (Consol. Reply), which served as his opposition to Sedgwick's motion but also contained arguments responsive to ByteDance's motion to dismiss and reply brief. (*See* Consol. Reply at 8–9). To the extent those portions of the filing functioned as a sur-reply to ByteDance's already fully briefed motion, they were procedurally improper under the Local Civil Rules. *See* L. Civ. R. 7.1(d)(6). Nevertheless, in light of Plaintiff's *pro se* status, the Court ruled that it will consider the arguments raised in the Consolidated Reply in resolving the pending motions. (*See* D.E. No. 55).

(Consol. Reply at 9).  And "[t]hese allegations, taken as true, easily satisfy the pleading standard under Twombly/Iqbal and Hooven v. Exxon Mobil. Corp.[.]" *Id.*  The Court disagrees.

ERISA Section 502(a)(1)(B) provides that a participant or beneficiary is empowered "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"  29 U.S.C. § 1132(a)(1)(B).  "A plaintiff seeking to recover under section 502(a)(1)(B) must demonstrate that the benefits are actually due; that is, he or she must have a right to benefits that is legally enforceable against the plan."  *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006) (internal quotation marks and citation omitted); *see also Atlantic Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *7 (D.N.J. Oct. 31, 2018) ("[T]o prevail under Section 502(a)(1)(B), a plaintiff must establish his or her right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." (internal quotation marks omitted)).  Because any entitlement to benefits arises from the terms of the plan itself, a plaintiff asserting a claim under Section 502(a)(1)(B) must identify the plan provisions that allegedly entitle him to the benefits sought.  *See Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996) ("Only the words of the Plan itself can create an entitlement to benefits.").

Consistent with that principle, courts within this Circuit have repeatedly dismissed ERISA benefits claims where the complaint fails to tie the alleged entitlement to benefits to specific provisions of the governing plan.  *See Redstone v. Aetna, Inc.*, No. 21-19434, 2025 WL 842514, at *12 (D.N.J. Mar. 18, 2025) (collecting cases); *see also Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018) (holding that without reference to any provision governing benefit payments under the

Plan itself, the plaintiffs' ERISA allegations were insufficient to state a plausible claim); *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015), aff'd, 650 F. App'x 106 (3d Cir. 2016) (dismissing claim where plaintiff failed to identify any plan provision suggesting entitlement to benefits); *K.S. v. Thales USA, Inc.*, No. 17-7489, 2019 WL 1895064, at *6 (D.N.J. Apr. 29, 2019) (observing that courts in this District routinely dismiss ERISA claims where plaintiffs fail to connect alleged violations to specific plan provisions).

The rationale underlying these decisions is straightforward. A plaintiff cannot plausibly allege that benefits are due under an ERISA plan merely by asserting that he should have received a different benefits determination. *See Hooven*, 465 F.3d at 574. Rather, the complaint must identify the plan language that allegedly confers the claimed entitlement and explain how the administrator's decision contravened that language. *See Redstone*, 2025 WL 842514, at *11–12.

Here, as ByteDance argues, the Complaint does not "identify any specific provisions of the STD Plan that show that he qualifies for and is owed short-term disability benefits (e.g. the requirement to be deemed disabled under the STD Plan and that plaintiff met the requirements)[.]" (ByteDance Reply Br. at 5). Plaintiff alleges that he applied for short-term disability benefits, that his physician certified his disability through May 12, 2025, and that Defendants improperly denied benefits beyond April 11, 2025. (Compl. ¶¶ 8–10, 17–18, 22 &26–30). Plaintiff further alleges that Defendants failed to give appropriate weight to his medical evidence and relied upon generalized assumptions regarding psychiatric impairments. (*Id.* ¶¶ 27–30). However, the Complaint does not identify any provision of the Short-Term Disability Plan or the governing ERISA Plan that entitled Plaintiff to benefits beyond April 11, 2025. (*See generally id.*). Nor does Plaintiff explain how the denial conflicted with any particular Plan term. (*Id.*). Instead, the Complaint contains little more than the conclusory assertion that Plaintiff was entitled to additional

10

benefits and that Defendants reached the wrong result.  Without identifying the Plan language allegedly violated, let alone explaining *how* Defendants did so, Plaintiff has failed to plausibly allege that benefits were "***due*** … under the terms of the plan."   29 U.S.C. § 1132(a)(1)(B) (emphasis added).  Accordingly, the Court finds that Plaintiff fails to state a claim under Section 502(a)(1)(B) against ByteDance.

The Court reaches the same conclusion as to Sedgwick, *albeit* for an additional reason.  A claim under ERISA § 502(a)(1)(B) may be maintained only against the plan itself or an entity that exercises control over the administration of benefits under the plan.  *See Evans v. Emp. Benefit Plan*, 311 F. App'x 556, 558 (3d Cir. 2009).  Indeed, "[e]xercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B)[.]"  *Id.*; *see also Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 12-2478, 2012 WL 6089814, at *2 (D.N.J. Dec. 6, 2012) ("[T]he Court notes that a § 502(a)(1) ERISA claim is only properly asserted against a third-party administrator of a self-funded plan if the third-party administrator is a fiduciary of that plan." (citing *Briglia v. Horizon Healthcare Svcs., Inc.*, No. 03-6033, 2005 WL 1140687, at *5 (D.N.J. May 13, 2005))).

ERISA defines a fiduciary as:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).  Sedgwick argues that Plaintiff's ERISA claims should fail against it "because there are no allegations in the Complaint supporting Sedgwick is a fiduciary of the Plan."

(Sedgwick Mov. Br. at 6). Sedgwick further argues that "[p]laintiff does not allege Sedgwick had any authority or control over the management of the Plan, disposition of the Plan's assets or administration of the Plan[,]" and "affirmatively disavows Sedgwick had the requisite discretionary authority and control, as he alleges 'the clear language of the Plan assign[s] the employer key responsibilities for overseeing and supporting the administration of disability-related benefits.'" (*Id.* at 7–8 (citing Compl. ¶ 25)).

In opposition, Plaintiff argues that Sedgwick exercised fiduciary authority over Plaintiff's claims by "issuing the May 21, 2025 denial letter, controlling the appeal process, and serving as the only point of communication on Plaintiff's STD claim."[4] (Consol. Reply at 3). Plaintiff further argues that "determining eligibility and deciding benefits entitlement—are quintessential discretionary functions, not ministerial tasks." (*Id.*). However, fiduciary liability will only attach to Sedgwick if it exercises "more discretion and control than that of a mere claims processor . . . [M]aking initial claims decisions and processing claims fails to constitute a fiduciary." *Montvale Surgical Ctr.*, 2012 WL 6089814, at *2 (quoting *Briglia,* 2005 WL 1140687, at *8).

Here, the Complaint alleges only that Sedgwick "is the third-party claims administrator" for the ByteDance Short-Term Disability Plan. (Compl. ¶ 7). Although Plaintiff repeatedly references communications with Sedgwick and challenges Sedgwick's handling of his claim, the

---

[4]    In opposing the Sedgwick motion, Plaintiff cites provisions of the Employee Health and Welfare Benefits Plan and Summary Plan Description that he contends demonstrate Sedgwick exercised discretionary authority over benefits determinations and therefore acted as an ERISA fiduciary. Plaintiff further attaches those documents as Exhibits to his Consolidated Reply. (Consol. Reply Ex. A & Ex. B). Those allegations do not appear in the Complaint, and a plaintiff may not amend his complaint through arguments raised in opposition briefing. *See, e.g., Pa. ex rel. Zimmerman v. PepsiCo*, *Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (holding that a court considering a Rule 12(b)(6) motion must limit its review to the allegations in the complaint, and "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984))). In any event, even considering the Plan provisions cited by Plaintiff in light of Plaintiff's *pro se* status, those provisions establish only that the Plan Administrator may delegate claims-administration and fiduciary responsibilities to a third-party administrator. (*See* Consol. Reply at 2). They do not identify Sedgwick as the recipient of any such delegation, nor do they otherwise establish that Sedgwick exercised discretionary authority sufficient to render it a fiduciary under ERISA. (*Id.*).

12

Complaint contains no factual allegations concerning Sedgwick's authority under the Plan, much less allegations demonstrating that Sedgwick exercised discretionary authority over eligibility determinations. (*See generally* Compl.).  To the extent Plaintiff argues that Sedgwick controlled the appeal process within the meaning of Section 502(a)(1)(B), Sedgwick argues that "Plaintiff cannot amend the Complaint with new allegations in his Reply[,]" and Plaintiff fails to allege in the Complaint the Sedgwick controlled the appeal process, acted in a way that directly determined whether Plaintiff would receive benefits from the Plan's asset, or took any actions showing it had any discretionary authority. (Sedgwick Reply Br. at 8–9).  The Court agrees with Sedgwick.  The assertions that Sedgwick controlled the appeal process and therefore acted as a fiduciary appear for the first time in Plaintiff's opposition briefing and are not alleged in the Complaint.  (*See generally* Compl.).  Indeed, in the Complaint, Plaintiff merely labels Sedgwick a third-party claims administrator and assumes, without supporting factual allegations, that Sedgwick is a proper ERISA defendant.  (*Id.*).  Such allegations are insufficient.  *See Evans*, 311 F. App'x at 558.

Accordingly, absent factual allegations plausibly demonstrating that Sedgwick exercised the requisite control over benefit determinations to qualify as a fiduciary, the Court finds that Plaintiff fails to state a claim against Sedgwick under ERISA Section 502(a)(1)(B).

### B.    Plaintiff's ERISA § 502(a)(3) Claim

Plaintiff next asserts a claim against Defendants under ERISA Section 502(a)(3), seeking equitable relief.  (Compl. ¶¶ 46–49).  ERISA Section 502(a)(3) allows a participant, beneficiary, or fiduciary to bring a civil action to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  To state a claim for breach of fiduciary duty under ERISA Section

502(a)(3), a plaintiff "must plausibly allege three elements: that the defendant was a fiduciary under the Plan, that the defendant breached a fiduciary duty, and that the breach harmed [the plaintiff]." *Tamburrino v. UnitedHealth Grp. Inc.*, No. 21-12766, 2022 WL 1213467, at *5 (D.N.J. Apr. 25, 2022) (quoting *Univ. Spine Ctr. v. Aetna Inc.*, No. 17-8160, 2018 WL 1409796, at *7 (D.N.J. Mar. 20, 2018)). Additionally, for a claim pursuant to Section 502(a)(3), a plan fiduciary is a proper defendant. *Id.* at *6. As discussed above, Plaintiff fails to allege sufficient fact to demonstrate that Sedgwick is a fiduciary of the Plan. Accordingly, Plaintiff's Section 502(a)(3) claim against Sedgwick is dismissed.

Having disposed of the Section 502(a)(3) claim against Sedgwick, the Court now turns to Plaintiff's claim against ByteDance. ByteDance argues that Plaintiff's claim for equitable relief is encompassed by his claim for benefits and should be dismissed. (ByteDance Mov. Br. at 11). According to ByteDance, though Plaintiff alleges that he seeks to address "systemic flaws," the claim "is just a disguised attempt to obtain the monetary relief he is seeking through the payment of short-term disability benefits." (*Id.* at 12). In opposition, Plaintiff relies on *CIGNA Corp. v. Amara* to demonstrate that Section 502(a)(3) can provide injunctive relief and structural remedies, and argues that he is seeking exactly such relief—"systematic reforms—to address the retaliatory and procedural misconduct alleged." (Consol. Reply at 10 (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011))).

The Court's analysis is guided by *Varity Corp. v. Howe*, which explained that Section 502(a)(3) functions as a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy." 516 U.S. 489, 512 (1996). In *dictum*, the Supreme Court of the United States further observed that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there

14

will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515. Consistent with that instruction, the Third Circuit has cautioned that courts should apply Section 502(a)(3) "cautiously" when an individual beneficiary seeks equitable relief. *Ream v. Frey*, 107 F.3d 147, 152–53 (3d Cir. 1997).

To be sure, courts within this District have recognized that *Varity* does not necessarily establish a bright-line rule prohibiting a plaintiff from simultaneously pursuing claims under Sections 502(a)(1)(B) and 502(a)(3). *See, e.g.*, *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, No. 17-2055, 2018 WL 2441768, at *13 (D.N.J. May 31, 2018) ("Neither the Supreme Court nor the Third Circuit has addressed directly whether *Varity* precludes a plaintiff from simultaneously pursuing claims under § 502(a)(1)(B) and § 502(a)(3), and there is a split among the other circuits, as well as within this district, as to the effect of that decision."). In *Plastic Surgery Ctr., P.A.,* though the Court did not reach the issue of whether *Varity* precludes a plaintiff, under any circumstances, from asserting claims under both Sections 502(a)(1)(B) and 502(a)(3), it held that "dismissal of Plaintiff's § 502(a)(3) claim is warranted, because Count Five is wholly duplicative of Counts Three and Four, in that it is based on the same conduct and seeks relief otherwise available under §§ 502(a)(1)(B) and 502(c)(1) of ERISA." *Id.* at *14. Similarly here, the Court need not decide whether such claims may ever proceed in tandem. Rather, the question presented here is whether Plaintiff's Section 502(a)(3) claim seeks relief for a distinct injury or merely repackages his claim for benefits in equitable terms. *Id.* at *13–14.

The Court concludes that the latter is true. The Court finds that, here, Plaintiff's Section 502(a)(3) claim is premised on the same underlying conduct as his Section 502(a)(1)(B) claim— namely, the allegedly wrongful denial of short-term disability benefits and Defendants' handling of his claim and appeal. Indeed, Plaintiff seeks, among other things, reinstatement of benefits,

15

payment of allegedly withheld benefits, and injunctive relief directed at the administration of his claim. (Compl. at 9). The Court is not persuaded by Plaintiff's characterization of his requested relief as "broad equitable relief to address [] systemic flaws[.]" ( Compl. ¶ 49). Although Plaintiff seeks various forms of injunctive and structural relief, including revisions to Plan procedures, appointment of a compliance monitor, designation of Plaintiff as a "Compliance Liaison," and authority to review claims files and observe claims meetings, (*id.*), those requests stem from the same alleged injury underlying Plaintiff's benefits claim—the denial of short-term disability benefits. Plaintiff identifies no distinct injury separate from the alleged denial of benefits, nor does he allege a violation for which ERISA fails to provide a remedy through its other enforcement provisions. *See Plastic Surgery Ctr.*, 2018 WL 2441768, at *14; *DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 533–34 (D.N.J. 2008).

Moreover, the Court finds Plaintiff's reliance on *CIGNA Corp. v. Amara* unavailing. *Amara* addressed the scope of equitable remedies available under Section 502(a)(3) and recognized that traditional equitable remedies, including reformation and surcharge, may be available in appropriate circumstances. *Amara*, 563 U.S. at 440–42. But *Amara* did not abrogate *Varity*'s instruction that equitable relief under Section 502(a)(3) is generally unavailable where ERISA elsewhere provides an adequate remedy for the alleged injury. *See Varity*, 516 U.S. at 515.

Accordingly, the Court concludes that Plaintiff's Section 502(a)(3) claim against ByteDance is duplicative of his claim for benefits and must be dismissed.

## C.    Plaintiff's ERISA § 510 Retaliation Claim

In Count II of the Complaint, Plaintiff asserts a claim for retaliation under ERISA Section 510. (Compl. ¶¶ 41–45). Plaintiff alleges that Defendants retaliated by "[d]eactivating Plaintiff's system access without prior notice or legal basis; [w]ithholding or delaying access to Plan

16

documents upon written request; [and] [d]enying benefits based on non-medical, pretextual, and retaliatory grounds, including behavioral observations irrelevant to medical eligibility." (*Id.* ¶ 42).

In moving for dismissal, Sedgwick argues that Plaintiff's ERISA Section 510 claim against it fails as a matter of law. (Sedgwick Mov. Br. at 9). The Court agrees. The Third Circuit has consistently held that the scope of Section 510 is limited to actions affecting the employer-employee relationship. *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1503 (3d Cir. 1994); *see also Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522–23 (3d Cir. 1997) ("Consequently, to recover under [S]ection 510, the employee must show that the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits.") (citation omitted).

Here, Plaintiff alleges that Sedgwick served as the third-party claims administrator for the ByteDance Plan. (Compl. ¶ 7). Indeed, the Complaint repeatedly identifies ByteDance—not Sedgwick—as Plaintiff's employer. (*See, e.g., id.* ¶ 5). Accordingly, Plaintiff fails to plausibly allege the employer-employee relationship required to state a claim under Section 510 against Sedgwick. *See Anderson v. Reliance Standard Life Ins. Co.*, No. 22-4654, 2022 WL 17490542, at *6 (D.N.J. Dec. 7, 2022); *see also Salvucci v. Glenmede Corp.*, No. 22-1891, 2022 WL 4692438, at *6 (E.D. Pa. Sep. 30, 2022) (dismissing claims under Section 510).

Having dismissed Plaintiff's Section 510 claim against Sedgwick, the Court turns to that claim as asserted against ByteDance. Unlike Sedgwick, ByteDance does not seek dismissal of the retaliation claim on the merits; instead, it contends that the claim is subject to mandatory arbitration under the Mutual Agreement to Arbitrate, (D.E. No. 24-2, Chen Dec., Ex. A ("MAA")), and that the action should be stayed pending arbitration. (ByteDance Mov. Br. at 15–16). In opposition, Plaintiff argues that the retaliation claim is "part of the ERISA carve-out" and therefore "falls

17

within ERISA's remedial scheme and outside arbitration[.]"[5] (Pl. Opp. Br. at 7). Plaintiff further argues that even if the MAA applies to the retaliation claim, it is unconscionable. (*Id.* at 8).

As a threshold matter, the Court must determine the appropriate standard for resolving Defendants' motions to compel arbitration. Under *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citation omitted). By contrast, where "the complaint and its supporting documents are unclear regarding the agreement to arbitrate," or where "the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," the parties are entitled to limited discovery, after which the motion is decided under the Rule 56 summary judgment standard. *Id.* at 774–76.

The Rule 12(b)(6) standard applies here. Although Plaintiff disputes whether his ERISA retaliation claim is subject to arbitration, he does not dispute the authenticity or validity of the MAA, nor does he contend that he did not execute it. (*See, e.g.,* Pl. Opp. Br. at 4–8 (arguing that the MAA does not permit arbitration of his claims or is otherwise unconscionable)). Likewise, Plaintiff does not request discovery or identify any factual dispute concerning the formation or existence of the MAA. (*See generally* Pl. Opp. Br.; Consol. Reply). Although Plaintiff disputes the enforceability of the MAA, "Plaintiff has not put the Agreement to arbitrate at issue, nor has

---

[5]     To the extent Plaintiff argues that neither the MAA nor the governing ERISA Plan documents permit arbitration of his ERISA claims, (Pl. Opp. Br. at 4), ByteDance concedes that Plaintiff's claim under ERISA Section 502(a)(1)(B) falls outside the scope of the MAA and the claim under ERISA Section 502(a)(3) "is also excluded to the extent it is a claim for benefits." (ByteDance Reply Br. at 11 ("[ByteDance] agrees. An ERISA claim for benefits falls outside the Arbitration Agreement, but an ERISA retaliation claim is more akin to an employment grievance and is subject to the [MAA]."). Accordingly, the Court limits its arbitration analysis to Plaintiff's retaliation claim under ERISA Section 510.

Plaintiff identified any other disputed facts relative to the disposition of Defendant[s'] motion[s]." *Romero v. Ctr. for Excellence in Higher Educ., Inc.*, No. 21-1124, 2023 WL 172229, at \*2 (D. Del. Jan. 12, 2023), *report and recommendation adopted*, 2023 WL 2662330 (D. Del. Mar. 28, 2023). Indeed, Plaintiff raises "pure legal" objections to the enforceability of the MAA. *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 579 (3d Cir. 2017). Under these circumstances, application of Rule 12(b)(6) is appropriate. *Id.* (holding that Rule 12(b)(6) applies where the plaintiff raises only "pure legal" challenges to an arbitration agreement); *see also Guidotti*, 716 F.3d at 776.

### i.    Whether Plaintiff's Claim Falls Within the Scope of the MAA

As explained above, before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is a valid agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("[S]tatutory ERISA claims are subject to compulsory arbitration under the FAA and in accordance with the terms of a valid arbitration agreement."). Because the parties do not dispute that a valid agreement to arbitrate exists, (*see* Pl. Opp. Br. at 4–8; ByteDance Reply Br. at 7–8), the central question here is whether Plaintiff's claims fall within the scope of the MAA.

"In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co.*, 584 F.3d at 524 (citation omitted). Consequently, a court must construe all doubts concerning the scope of arbitrable issues in favor of arbitration. *Great W. Mortg. Corp. v. Peacock,* 110 F.3d 222, 228

19

(3d Cir. 1997).  However, "while interpretive disputes should be resolved in favor of arbitrability, a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt."  *Gay v. CreditInform,* 511 F.3d 369, 387 (3d Cir. 2007) (quoting *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (internal quotation marks omitted)).

Here, the MAA provides in relevant parts that it is

> intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration, including without limitation, to ***disputes arising out of or relating to*** the application for employment, background checks, privacy, employment relationship, or the termination of that relationship . . . ***retaliation, discrimination,*** or harassment and claims arising under the . . . ***Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance).***

(*See* D.E. No. 22-1, Chen Dec., Ex. A at 4) (emphasis added).  ByteDance argues that "[b]ecause the [MAA] broadly covers all disputes regarding the employment relationship, including but not limited to retaliation and discrimination, there can be no question that all the claims (e.g. equitable relief, retaliation) aside from Plaintiff's claim for benefits, fall squarely within the scope of the [MAA] and are subject to arbitration."  (ByteDance Mov. Br. at 17).

The Court agrees that this clause appears to be rather broad, calling for arbitration of "any dispute arising out of or relating to" claims under ERISA except for claims for benefits.  *See Local 827, Int'l Bhd. of Elec. Workers, AFL–CIO v. Verizon N.J., Inc.,* 458 F.3d 305, 310 (3d Cir. 2006); *Medtronic AVE Inc. v. Cordis Corp.,* 100 F. App'x 865, 868 (3d Cir. 2004) ("When phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction.").  Accordingly, there is a strong presumption that Plaintiff's Section 510 claim is subject to arbitration.  *See AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643,

20

650 (1986) ("Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . . .'") (citation omitted). In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85 (1960)).

Here, Plaintiff's Section 510 retaliation claim plainly arises out of and relates to his employment relationship with ByteDance. The MAA expressly applies to disputes "arising out of or relating to" the "employment relationship, or the termination of that relationship," and specifically enumerates claims of "retaliation" and "discrimination," as well as claims arising under ERISA. (*See* ByteDance Mov. Br. at 17; D.E. No. 22-1, Chen Dec., Ex. A at 4). The only ERISA-related matter the MAA carves out from arbitration is a "claim[] for employee benefits under any benefit plan sponsored by the Company and covered by [ERISA]." (*Id.*). ByteDance concedes—and the Court agrees—that Plaintiff's claim for benefits under Section 502(a)(1)(B) falls outside the MAA, but ByteDance maintains that the retaliation claim does not. (ByteDance Reply Br. at 11). The Court further agrees with ByteDance's characterization that a retaliation claim under Section 510 is not a claim for benefits; rather, it is "more akin to an employment grievance" that falls squarely within the MAA's broad coverage of disputes concerning the employment relationship. (*Id.*). Plaintiff identifies no provision of the MAA excluding his Section 510 claim from arbitration, and, in turn, the presumption of arbitrability has not been overcome by "the most forceful evidence of a purpose to exclude the claim from arbitration." *AT&T Techs.,*

21

475 U.S. at 650. The Court therefore concludes that Plaintiff's Section 510 retaliation claim falls within the scope of the MAA.

### ii.        Whether the MAA Is Unconscionable

Plaintiff next argues that the MAA is unconscionable. (Consol. Reply at 6). The Court is not persuaded. "The burden of proving . . . unconscionability lies with the party challenging the contract provision." *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 277 (3d Cir. 2004); *see also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) ("The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability."). "In evaluating claims of unconscionability, courts generally recognize two categories, procedural, or 'unfair surprise,' unconscionability and substantive unconscionability." *Harris*, 183 F.3d at 181. Therefore, to establish unconscionability a plaintiff must show "that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Id.* at 181; *see also OKLegal.com v. Meta Platforms, Inc.*, No. 25-2346, 2026 WL 850812, at *4 (D.N.J. Mar. 27, 2026). An agreement must be both procedurally and substantively unconscionable for a court to declare it unenforceable. *Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681, 2024 WL 1366446, at *23 (D.N.J. Apr. 1, 2024); *accord Parilla*, 368 F.3d at 277 ("In the end, unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." (quoting *Alexander*, 341 F.3d at 265-66)). The Court thus considers Plaintiff's arguments regarding procedural and substantive unconscionability in turn.

***Procedural   Unconscionability.***      Plaintiff argues that the MAA is procedurally unconscionable because it was "never implemented in practice as a genuine dispute-resolution

mechanism," (Consol. Reply at 6), rather, it was "a dormant 'boogeyman' clause—dusted off when advantageous to the employer." (*Id.* at 7). Further still, Plaintiff argues that "ByteDance itself did not treat arbitration as a mutually understood or consistently applied process." (*Id.* at 6–7).

However, "[p]rocedural unconscionability focuses on the circumstances of the negotiation that produced the contested term," and typically is present when a party has "no meaningful choice" in negotiating the term due to "a gross disparity in bargaining power." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *11 (D.N.J. May 8, 2017) (quoting *Skeen v. BMW of N. Am., LLC*, No. 12-1521, 2014 WL 283628 *12 (D.N.J. Jan 24, 2014)); *see also Harris*, 183 F.3d at 181 ("Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." (citation omitted)).

Here, Plaintiff makes no argument pertaining to the insufficiencies of the procedure afforded him with respect to the MAA. Plaintiff's contentions that ByteDance treated the MAA as a "dormant 'boogeyman' clause" and failed to apply it consistently concern the manner in which ByteDance has invoked the agreement in this litigation, not the circumstances surrounding its negotiation and execution. (*See* Consol. Reply at 6–7). Such arguments are not probative of procedural unconscionability. *See Harris*, 183 F.3d at 181. Plaintiff therefore has not demonstrated that the MAA is procedurally unconscionable.

***Substantive Unconscionability***.   Plaintiff argues that the MAA is substantively unconscionable because the Plan documents "explicitly guaranteed participants the right to 'file suit in a federal court' if benefits are denied." (Consol. Reply at 7). The Court finds Plaintiff's reliance on the Plan Documents misplaced. Here, ByteDance does not contend that the Court should compel Plaintiff's claims for benefits to arbitration. (*See* ByteDance Mov. Br. at 17).

Instead, ByteDance only argues that Plaintiff's retaliation claim under ERISA Section 510 is within the scope of the MAA.  (*Id.*).

Moreover, courts will typically find a contract term to be substantively unconscionable if the term is "excessively disproportionate," involving an "exchange of obligations so one-sided as to shock the court's conscience."  *Delta Funding Corp. v. Harris*, 912 A.2d 104, 120 (N.J. 2006) (quoting *Sitogum Holdings, Inc. v. Ropes,* 800 A.2d 915, 921 (N.J. Ch. Div. 2002)).  "An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum.'"  *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364 (3d Cir. 2007)).  Here, Plaintiff makes no argument as to why arbitration of his retaliation claim would "alter or limit the rights and remedies" available to him.  *Id.*  To the contrary, the MAA provides for a neutral arbitrator, requires a written decision setting forth the essential findings of fact and conclusions of law, obligates ByteDance to pay the arbitrator's fees and the costs unique to arbitration, allows for adequate discovery, and authorizes the arbitrator to award any remedy that would be available in a judicial forum.  (ByteDance Reply Br. at 9–10; MAA at 8).  Because the MAA does not limit Plaintiff's substantive rights or remedies otherwise available to him, the Court concludes that it is not substantively unconscionable.

Accordingly, because Plaintiff has failed to establish that the MAA is either procedurally or substantively unconscionable, the Court rejects Plaintiff's unconscionability argument.  *See Snowdy*, 2024 WL 1366446, at *23.  Having determined that Plaintiff's Section 510 retaliation claim against ByteDance falls within the scope of a valid and enforceable arbitration agreement, the Court grants ByteDance's motion to compel arbitration of that claim and stays this action as to

24

the retaliation claim pending the completion of arbitration.  *See* 9 U.S.C. §§ 3–4; *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 275 (3d Cir. 2004).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss and compel arbitration are **GRANTED**.  Specifically, Count I (ERISA § 502(a)(1)(B)) is **DISMISSED** *without prejudice* as to both ByteDance and Sedgwick; Count II (ERISA § 510) is **DISMISSED** *without prejudice* as to Sedgwick and referred to arbitration as to ByteDance, with the action **STAYED** at to that claim pending completion of arbitration; and Count III (ERISA § 502(a)(3)) is **DISMISSED** *without prejudice* as to both Defendants.  Because Plaintiff proceeds *pro se*, Plaintiff may file an amended complaint curing the deficiencies identified in this Opinion within thirty (30) days of the accompanying Order.

**Date**: July 13, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

25